## IN RE JUVENILE APPEAL (1983–4)*

APPELLATE SESSION OF THE SUPERIOR COURT

PER CURIAM. This is an appeal by the defendant mother from a judgment adjudicating her minor daughter to be neglected and committing the child to the custody of the department of children and youth services (DCYS).

The commissioner of DCYS originally filed a petition of neglect dated September 12, 1980, alleging that the presence of the defendant's live-in boyfriend was injuri-

---

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 1092, the names of the parties involved in this appeal are not disclosed.

Reporter of Judicial Decisions

ous to the well-being of the defendant's four year old daughter. All the parties involved agreed that the boyfriend was a violent and uncontrolled person whom the child feared. After a series of hearings and continuances, the child was committed to DCYS pursuant to a stipulation of neglect. Thereafter, the child was placed with her maternal aunt where she lived until August 14, 1982, when she was returned to the custody of her mother.

Although her boyfriend had not been living with her since the fall of 1981, the defendant continued to see him after the child was placed with her aunt. When the defendant returned home with her daughter on August 14, 1982, her boyfriend was in the apartment. He remained there with the defendant and her daughter throughout the weekend.

The commissioner of DCYS then filed another petition of neglect dated August 20, 1982, alleging that the child was "living under conditions injurious to her physical and emotional well-being." After a hearing on the petition held November 5, 1982, the court found that the child was neglected and committed her to the custody of the DCYS for continued placement with her aunt.

The defendant first claims there was insufficient evidence to support a finding of neglect. We disagree. General Statutes § 46b-120 provides that "a child or youth may be found 'neglected' who . . . is being permitted to live under conditions, circumstances or associations injurious to his well-being." The defendant argues that no evidence was offered to show that anything improper occurred during the weekend her boyfriend stayed with them. Therefore, she claims the state failed to prove that the incident was harmful to her daughter's well-being.

The court file of the prior neglect proceedings involving these parties, however, of which the trial court took judicial notice,[1] amply documents the adverse effect that the mere presence of the defendant's boyfriend has upon the child's emotional stability. The file also reveals that on at least two occasions the defendant had violated a court order requiring her to prevent any contact between her daughter and her boyfriend. This order was still in effect when the defendant allowed her daughter to remain in the presence of her boyfriend for the entire weekend of August 14.

Additionally, pursuant to an agreement by all of the parties to the proceeding, the trial court interviewed the minor child in the presence of the child's counsel. During this interview, the child expressed great fear of her mother's boyfriend and said that she did not like him because he hit her. She further said that she loved her mother but wished to stay with her aunt because whenever she saw her mother, the boyfriend seemed to be there. The child's testimony corresponded with that given by the DCYS caseworker at the neglect hearing. We conclude that there was sufficient evidence to support the finding of neglect.

The defendant next claims that the court erred in permitting the state to amend the petition at the beginning of the adjudicatory hearing to include a recitation of the facts upon which the allegation of neglect was based. The second petition merely claimed that the child was "living under conditions injurious to her physical and emotional well-being." Amendments to a neglect petition lie within the discretion of the trial court. Practice Book § 1029. Nothing in the record indicates that the court abused its discretion in allowing the amend-

---

[1] The trial court notified all counsel present at the November 5 hearing that it was taking judicial notice of the prior court file relative to the defendant and her daughter. The defendant did not object to this.

ment and we therefore cannot disturb its ruling on this issue. *Saphir* v. *Neustadt,* 177 Conn. 191, 206, 413 A.2d 843 (1979).

The defendant further claims that the court erred in committing the child to the custody of the DCYS. State intervention in family matters is only justified when it is in the best interests of the child. *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 285, 455 A.2d 1313 (1983). In making its disposition, the trial court must balance the child's interests in safety and in a stable family environment with the mother's interest in the integrity of the family. It is only when "the child's interest no longer coincides with that of the parent, thereby diminishing the magnitude of the parent's right to family integrity; *In re Angelia P.,* 28 Cal. 3d 908, 916–17, 623 P.2d 198 (1981);" *In re Juvenile Appeal (83-CD),* supra, 287–88; that the state may intervene to protect the child.

In the present case, the child told the trial court she wished to live with her aunt because of her fear of her mother's boyfriend. The various social summaries and family evaluations in the record before the court unanimously described the child as emotionally fragile and in need of protection from exposure to her mother's boyfriend. The record also contained evidence of the defendant's past refusal to prevent contact between her daughter and her boyfriend. Testimony at the hearing on November 5, 1982, established that the same day the defendant regained custody of her daughter, she again allowed such contact to occur. Further, the DCYS social worker's report filed October 26, 1982, indicated that the defendant had told her family that, regardless of the outcome at the neglect hearing, she was going to move with her daughter to New York City, where her boyfriend currently lives. We find that under these circumstances, the court did not err in concluding that the defendant is currently unable to provide the

protection her daughter needs and that the child's best interests therefore required placing her in the custody of the DCYS.

There is no error.

DALY, BIELUCH and CIOFFI, Js., participated in this decision.